JOE SMALL, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

Where the whole evidence in a criminal case is brought up by a writ of error and fails entirely to prove the charges made in the indictment, this court will reverse the judgment and award a new trial.

Writ of Error to the Circuit Court for Marion county.

The facts of the case are stated in the opinion.

*Miller & Spencer* and *R. B. Hilton* for Plaintiff in Error.

*The Attorney-General* for the State.

MR. JUSTICE VANVALKENBURGH delivered the opinion of the Court.

At the October term of the Circuit Court held in and for the county of Marion in the year A. D. 1883, the plaintiff in error, Joe Small, was indicted for an assault with a loaded pistol upon Elijah Ferguson, with a premeditated design to effect his death, and charging him with being guilty of an assault with intent to kill and murder. At the same term of the court the defendant was tried and found guilty. The counsel for defendant moved for a new trial upon several grounds, among which are the following :

" Because the verdict of the jury is contrary to the evidence, and without the evidence to support it."

" Because the verdict of the jury is contrary to law, and the charge of the court."

This motion was denied and an exception thereto duly taken.

Counsel then moved in arrest of judgment upon several grounds, which motion was also denied, and an exception taken.

From the judgment of the court the defendant brings his writ of error, and assigns for error, among others, that the court erred in not granting a new trial, upon the grounds and for the reasons set forth in the said motion.

On the trial of the case, Elijah Ferguson testified that he, on the 18th day of October, 1883, left Ocala about half-past eleven o'clock at night to go home. " As. I got in a thick oak grove in front of Mr. Trantham's house, some one on horseback rode very near to me; liked to have rode over me; I said to him d—n you, who are you? Who are you trying to ride over? He replied, ' G—d d—n you, who the h—ll are you?' After he spoke I recognized him by his voice to be Joe Small. He then whirled his horse, dismounted and shot at me twice with a pistol. Knew it was a pistol by the report." On his cross-examination he further testified as follows: " I had never spoken to him in my life, and he had never spoken to me at that time. I did not know him before that time. This was between eleven and twelve o'clock on the night of October 18th, 1883. I could not tell what kind of a horse he was on, as it was pretty dark when he rode past me, and when he shot the horse was jumping and trying to break loose; when I said that I didn't know Joe Small, I meant to be understood simply that I had never spoken to him or he to me. I did know him by sight, have known him for some years. Have seen him now and then on the streets and been told that his

name was Joe Small. There is nothing peculiar in his voice. I *believe* it was Joe Small."

Claiborne Hamilton, introduced as a witness on the part of the people, testified that on the " eighteenth day of October I remained at McGrath's bar-room in the town of Ocala until they started to shut up. Mr. Strobhar looked at his watch and said it was twelve o'clock. I then got a quart of whiskey and started home. As I was going across the narrow gauge railway I met a man coming south across said railway, coming into town on horseback. I *took it to be Joe Small.* Shortly after the man passed me I heard a pistol shot. It was about two hundred yards from where Small passed me to the place where I heard the pistol shoot. Small, when he passed me, was going in that direction—the direction of the woods in front of Dr. Tranth-am's. I said to myself, ' I wonder who the d—l is that shooting at me; I haven't done nobody nothin'.' " On his cross-examination, he testified : " I would not swear the man I met was Joe Small. I took it to be him. I did not speak to him, nor he to me. At the time the pistol was shot I was one hundred or one hundred and fifty yards on the other side of the railroad. The oak grove in front of Mr. Trantham's is about one hundred yards on the south side of the railroad."

William E. Schoeflin, on the part of the State, testified : " I am Marshal of the town of Ocala. I saw Small here on the night of October 18th on horseback. It was about nine o'clock on that night that I saw him. I had just blown the whistle for my deputy to come on duty. He comes on at nine o'clock."

This was all the proof on the part of the people. There is not sufficient evidence to convict Small of the offence. Ferguson's evidence is defective in that he does not posi-tively identify the accused, nor is there evidence of a pre-

meditated design to effect the death as charged. In fact, it nowhere appears that the pistol, if fired, was pointed at him, or intended to be pointed at him. The proof of the witness, Hamilton, goes to show that he thought somebody was shooting at him, and with equal reason he might have been the complainant in this cause. He does not identify the accused. He swears, " I would not swear the man I met was Joe Small; I took it to be him."

The Marshal only testified that he saw Small in Ocala about nine o'clock on horseback on that night. This might be all true, and yet Joe Small innocent of the alleged crime which was committed, if at all, between eleven and twelve o'clock the same night. Ferguson had never spoken to Small, nor Small to him, yet in the dark night, so dark that he could " not tell what kind of a horse he was on," he recognized him by his voice, which he says was not peculiar, and believed it to be him. The evidence is defective and no man should be convicted thereon of a crime punished so severely as that of a premeditated attempt " to kill and murder." But this is not all. The defence introduced witnesses to prove an alibi.

William Lucius testified " that on the 18th day of October, 1883, I met Joe Small in Mr. Robinson's store in the town of Ocala. We left Ocala at about seven o'clock P. M. and rode south about seven miles where we parted, he going up to Gilbert Little's house, where he (Small) stays. I went on home. We parted between eight and nine o'clock near Gilbert Little's house." Gilbert Little testified : " Joe Small stays at my house. On the 18th October he had been to town and came home betwixt eight and nine o'clock. After feeding his horse he came into the house and ate his supper. He then commenced teaching me a lesson in arithmetic. It was after twelve o'clock before he went to bed. I went to bed a quarter or a half hour after

he did. I swear positively he could not have been in town that night at any time between the hours of nine o'clock and twelve o'clock, because I was with him all the time between those hours. Sandy Williams and Alexander Holloman were at my house. Joe was not in town that night after nine o'clock, I know."

Sandy Williams testified : " On the night of the 18th day of October, 1883, just before ten o'clock, I left my shop to go over to Gilbert Little's. It is about half a mile from my shop to Gilbert Little's. When I got to his house I found Joe Small sitting down there teaching Little some kind of a lesson. I got there about eleven o'clock and remained until after twelve. Gilbert Little, Joe Small and Alexander Holloman were present."

This is the substance of all the evidence in the record. There was no rebuttal to defendant's evidence, and no attempt to impeach the reputation of the accused's witnesses for truth. The State did not prove sufficient to warrant a conviction for a felony, and the evidence of an alibi is certainly sufficient of itself to warrant the court in granting a new trial.

The judgment is reversed on this ground alone, and a new trial ordered.